PARIENTE, J.,
concurring.
Ms. Aldrich’s failure to include a residuary clause within her self-drafted will, which she created using a commercially available form, compels the result reached by the majority and urged by the Real Property, Probate and Trust Law Section of The Florida Bar. Unfortunately, I surmise that, although this is the correct re- *538 suit under Florida’s probate law, this result does not effectuate Ms. Aldrich’s true intent. While we are unable to legally consider Ms. Aldrich’s unenforceable handwritten note that was found attached to her previously drafted will, this note clearly demonstrates that Ms. Aldrich’s true intent was to pass all of her “worldly possessions” to her brother, James Michael Aldrich. As the majority states, however, although this note may represent Ms. Ald-rich’s true intent, it was not her stated intent in the will to which this Court is confined in determining Ms. Aldrich’s testamentary intent. Thus, Florida probate law dictates that Ms. Aldrich’s after-acquired property pass by intestacy, and in this case, ultimately be inherited by two nieces to whom she made no specific or general bequests.
This unfortunate result stems not from this Court’s interpretation of Florida’s probate law, but from the fact that Ms. Aid-rich wrote her will using a commercially available form, an “E-Z Legal Form,” which did not adequately address her specific needs — apparently without obtaining any legal assistance. This form, which is in the record, did not have space to include a residuary clause or pre-printed language that would allow a testator to elect to use such a clause. Because Ms. Aldrich’s will devised all of her currently held property, this omission was not initially problematic. However, when Ms. Aldrich later acquired property from her sister, who pre-de-ceased her, the absence of a residuary clause frustrated Ms. Aldrich’s testamentary intent because, without such a clause, Ms. Aldrich’s self-drafted will expressed no intent as to this after-acquired property. Apparently, Ms. Aldrich at some point recognized that her acquisition of this property needed to be addressed, but her attempts to amend her will to account for this after-acquired property, although logical, were legally ineffective.[3]
While I appreciate that there are many individuals in this state who might have difficulty affording a lawyer, this case does remind me of the old adage “penny-wise and pound-foolish.” Obviously, the cost of drafting a will through the use of a pre-printed form is likely substantially lower than the cost of hiring a knowledgeable lawyer. However, as illustrated by this case, the ultimate cost of utilizing such a form to draft one’s will has the potential to far surpass the cost of hiring a lawyer at the outset. In a case such as this, which involved a substantial sum of money, the time, effort, and expense of extensive litigation undertaken in order to prove a testator’s true intent after the testator’s death can necessitate the expenditure of much more substantial amounts in attorney’s fees than was avoided during the testator’s life by the use of a pre-printed form.
I therefore take this opportunity to highlight a cautionary tale of the potential dangers of utilizing pre-printed forms and drafting a will without legal assistance. As this case illustrates, that decision can ultimately result in the frustration of the testator’s intent, in addition to the payment of extensive attorney’s fees — the precise results the testator sought to avoid in the first place.

. The record indicates that Ms. Aldrich’s brother sought to admit testimony that shortly before her death, Ms. Aldrich had consulted with an attorney who was to draft a will for her, but that she died just days before she was to review the newly drafted will. This testimony was declared inadmissible hearsay. Nevertheless, it appears that Ms. Aldrich may have finally realized that she needed legal assistance, but, unfortunately, that realization came too late.